**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| ELEXUS WINBUSH, | ) | |
| | ) | Civil Action File No. _____ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| ALBANY AREA PRIMARY | ) | |
| HEALTH CARE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES**

Plaintiff Elexus Winbush ("Plaintiff" or "Ms. Winbush") files this Complaint for Equitable Relief and Damages against Albany Area Primary Health Care, Inc. ("AAPHC" or "Defendant") showing the Court as follows:

**INTRODUCTION**

1.     Ms. Winbush asserts claims for discrimination, retaliation, and failure to accommodate in violation of Title I of the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008 ("ADA"), 42 U.S.C. § 12101 *et seq.* Ms. Winbush also asserts claims for gender/pregnancy discrimination arising because AAPHC terminated her employment due to her pregnancy and/or pregnancy-related medical conditions in violation of the pregnancy provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e(k) ("Title VII," the "Pregnancy Discrimination Act," or "PDA").

2.     Ms. Winbush seeks injunctive and declaratory relief, back pay and lost benefits, front pay or reinstatement to a full-time position with commensurate benefits, compensatory damages, punitive damages, and attorney's fees and costs of litigation.

<u>**JURISDICTION AND VENUE**</u>

3.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

4.      Venue is proper in this district and division under 28 U.S.C. § 1391 because Defendant Albany Area Primary Health Care, Inc. conducts business in this district and division and the unlawful actions and practices alleged herein were committed within the Middle District of Georgia.

<u>**EXHAUSTION OF ADMINISTRATIVE REMEDIES**</u>

5.      On December 1, 2022, Ms. Winbush faxed an inquiry to the Atlanta District Office of the Equal Employment Opportunity Commission that the EEOC received that same day in which Ms. Winbush included the following information:

- EEOC Inquiry Number 410-2023-01865;

- Her name, address, phone number, and email address;

- "I want to file a charge against Albany Area Primary Healthcare";

- AAPHC's primary address, the address at which she had been employed, and AAPHC's phone number;

- The approximate number of persons employed by AAPHC;

- The basis and particulars for her Charge of Discrimination;

- The date of the first adverse action; and

- Her signature.

6.      On December 1, 2022, the EEOC assigned Ms. Winbush's Charge of Discrimination Charge No. 410-2023-01865

7.    Ms. Winbush's Charge of Discrimination was filed with the EEOC within 180 days of the occurrence of the acts of which she complains.

8.    Ms. Winbush received a Dismissal and Notice of Rights from the EEOC relating to her charge of discrimination on January 12, 2024.

9.    Ms. Winbush brings this suit within ninety (90) days of the receipt of her Dismissal and Notice of Rights.

## THE PARTIES

10.    Ms. Winbush is a citizen of the United States, a resident of the State of Georgia, and submits herself to the jurisdiction of this Court.

11.    Ms. Winbush is and, at all times relevant hereto, was an individual with a disability as that term is defined by 42 U.S.C. § 12102(1) – high risk pregnancy relating to cardiac impairments of her own and her unborn child.

12.    Ms. Winbush is a person with a disability – specifically, one or more impairments related to her pregnancy, she has a record of impairment, and because AAPHC regarded her as having an impairment.

13.    At all times relevant, Ms. Winbush was capable of performing the essential functions of her job as a Certified Nursing Assistant with an accommodation of medical leave of a definite duration.

14.    Ms. Winbush was, at all times relevant hereto, an employee within the meaning of Title VII, the PDA.

15.    AAPHC is a domestic non-profit corporation licensed to do business in Georgia and transacts business in the Middle District of Georgia.

3

16.     AAPHC is an employer engaged in commerce or in an industry affecting commerce within the meaning of the ADA and Title VII/the PDA and has employed more than 15 persons for each working day in each of 20 calendar weeks in the current or preceding calendar year.

17.     AAPHC is subject to the Court's jurisdiction and may be served with summons and a copy of the Complaint in this action by delivering process to its registered agent for service of process, Shelly Spires, 204 N. Westover Blvd., Albany, Georgia 31707.

<u>STATEMENT OF FACTS</u>

18.     Ms. Winbush was employed as a Certified Nursing Assistant with AAPHC from August 9, 2021 through June 16, 2022.

19.     Ms. Winbush was a good employee, with a good work ethic, who went above and beyond in performing her job duties at AAPHC.

20.     In or around October 2021, Ms. Winbush learned that she was pregnant and shared that information with AAPHC.

21.     Ms. Winbush's medical care providers throughout her pregnancy were affiliated with AAPHC.

22.     In the spring of 2022, Ms. Winbush's medical providers determined that both she and her unborn child suffered from cardiac impairments causing her pregnancy to be high risk to both herself and her baby.

23.     Ms. Winbush shared this information with both her supervisor, Sonja Miller and Human Resources Director Brandi Sutton.

24.     Ms. Winbush worked on May 16, 2021 and then went to a doctor's appointment in which she was placed on bedrest for the remainder of her pregnancy.

4

25.     That same day, Ms. Winbush provided her doctor's note to Ms. Miller who told Ms. Winbush that she would fax the document to Ms. Sutton.

26.     Ms. Winbush had previously provided FMLA paperwork relating to her maternity leave to both Ms. Miller and Ms. Sutton but was told that she did not qualify for FMLA leave.

27.     On June 8, 2022, Ms. Winbush delivered her baby and notified Ms. Miller of the same.

28.     On June 15, 2022, Ms. Sutton called Ms. Winbush and told her that AAPHC might need to replace her during her maternity leave because she was not eligible for FMLA.

29.     Ms. Winbush did not immediately hear any further about whether she would be replaced.

30.     From June 20, 2022 through July 21, 2022, Ms. Winbush's newborn daughter was inpatient at Navicent Children's Hospital in Macon, Georgia.

31.     On July 26, 2022, Ms. Winbush's physician released her to return to work on August 1, 2022.

32.     Also on July 26, 2022, Ms. Winbush brought her release to return to work to Ms. Sutton.

33.     On July 26, 2022, Ms. Sutton told Ms. Winbush that she could not return to work because she had been replaced.

34.     At that time, Ms. Sutton typed up a prepared a separation notice in front of Ms. Winbush alleging that Ms. Winbush had been terminated on June 16, 2022 because she was "unable to return to work due to medical reasons – not approved for FMLA."

35.     Ms. Sutton dated the separation notice July 26, 2022.

5

36.     Ms. Winbush attempted twice to grieve her termination but was ignored.

37.     Nor was Ms. Winbush reinstated by AAPHC when the next CNA position opened.

38.     Rather than grant Ms. Winbush reasonable accommodations, AAPHC terminated Ms. Winbush's employment.

39.     AAPHC's actions were done intentionally, willfully and in bad faith in violation of Ms. Winbush's rights under the ADA and Title VII supporting a claim for punitive damages.

40.     The effect of the above-stated actions has been to deprive Ms. Winbush of employment opportunities, income in the form of wages, prospective employment benefits, including social security and other benefits to which she would have been entitled but for these illegal actions.

41.     AAPHC's above-stated discriminatory actions also caused Ms. Winbush out-of-pocket losses, including attorney's fees, and mental and emotional distress for which she seeks compensation.

**COUNT I**
**VIOLATION OF ADA – REGARDED AS DISABLED**

42.     Ms. Winbush incorporates by reference all the preceding paragraphs of the Complaint.

43.     At all times relevant hereto, AAPHC has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADA.

44.     At all times relevant hereto, Ms. Winbush was an individual with a disability as defined by the ADA, 42 U.S.C. § 12102 (1)(C) because AAPHC regarded her as a person with an impairment as defined by the Act.

6

45.    Moreover, at all times relevant hereto, Ms. Winbush has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111 (8) and able to perform the essential functions of the job.

46.    AAPHC terminated Ms. Winbush and failed to reinstate her to the next available CNA position because it regarded her as disabled under the ADA.

47.    Defendant's actions violated Section 102 of the ADA, 42 U.S.C. § 12112, which prohibits discrimination because of disability.

48.    As a direct and proximate result of AAPHC's intentional discrimination, Ms. Winbush has suffered out-of-pocket losses and has been deprived of job-related economic benefits, including income in the form of wages, all in an amount to be established at trial.

49.    Ms. Winbush is entitled to damages including back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorney's fees and costs of litigation, and all other relief recoverable under the ADA.

50.    AAPHC's actions have caused and continue to cause Ms. Winbush to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

51.    Accordingly, Ms. Winbush is entitled to the equitable and monetary relief set forth in the following prayer for relief for AAPHC's violation of her rights under the ADA.

## COUNT II
### ACTUAL DISCRIMINATION / FAILURE TO ACCOMMODATE IN VIOLATION OF ADA

52.    Ms. Winbush incorporates by reference all the preceding paragraphs of the Complaint.

7

53.     At all times relevant hereto, AAPHC has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADA.

54.     At all times relevant to this action, Ms. Winbush was an individual with a disability as defined by the ADA, specifically 42 U.S.C. § 12102(1).

55.     Ms. Winbush was a qualified individual with a disability as defined by the ADA, 42 U.S.C. § 12111(8), and was able to perform the essential functions of her job with an accommodation – leave of a definite duration.

56.     Ms. Winbush also had a record of disability.

57.     Ms. Winbush performed the essential functions of her job well and never received any complaints, corrective training, or warnings.

58.     AAPHC was aware of Ms. Winbush's disabilities and history and record of disabilities.

59.     In or around October 2021, Ms. Winbush learned that she was pregnant and shared that information with AAPHC.

60.     Ms. Winbush's medical care providers throughout her pregnancy were affiliated with AAPHC.

61.     In the spring of 2022, Ms. Winbush's medical providers determined that both she and her unborn child suffered from cardiac impairments causing her pregnancy to be high risk to both her and her baby.

62.     Ms. Winbush shared this information with both her supervisor, Sonja Miller and Human Resources Director Brandi Sutton.

63.     Ms. Winbush worked on May 16, 2022, and then went to a doctor's appointment in

8

which she was placed on bedrest for the remainder of her pregnancy.

64.    That same day, Ms. Winbush provided her doctor's note to Ms. Miller who told Ms. Winbush that she would fax the document to Ms. Sutton.

65.    Ms. Winbush had previously provided FMLA paperwork relating to her maternity leave to both Ms. Miller and Ms. Sutton but was told that she did not qualify for FMLA leave.

66.    On June 8, 2022, Ms. Winbush delivered her baby and notified Ms. Miller of the same.

67.    On June 15, 2022, Ms. Sutton called Ms. Winbush and told her that AAPHC might need to replace her during her maternity leave because she was not eligible for FMLA.

68.    Ms. Winbush did not immediately hear any further about whether she would be replaced.

69.    From June 20, 2022 through July 21, 2022, Ms. Winbush's newborn daughter was inpatient at Navicent Children's Hospital in Macon, Georgia.

70.    On July 26, 2022, Ms. Winbush's physician released her to return to work on August 1, 2022.

71.    Also on July 26, 2022, Ms. Winbush brought her release to return to work to Ms. Sutton.

72.    On July 26, 2022, Ms. Sutton told Ms. Winbush that she could not return to work because she had been replaced.

73.    At that time, Ms. Sutton typed up a prepared a separation notice in front of Ms. Winbush alleging that Ms. Winbush had been terminated on June 16, 2022 because she was "unable to return to work due to medical reasons – not approved for FMLA."

9

74.    Ms. Sutton dated the separation notice July 26, 2022.

75.    Ms. Winbush attempted twice to grieve her termination but was ignored.

76.    Nor was Ms. Winbush reinstated by AAPHC when the next CNA position opened.

77.    Ms. Sutton admits that AAPHC was aware of Ms. Winbush's need for reasonable accommodation of four months of medical leave.

78.    Ms. Sutton also admits that AAPHC refused to even consider accommodating Ms. Winbush because she was not FMLA eligible.

79.    Rather than grant Ms. Winbush reasonable accommodations, AAPHC terminated Ms. Winbush's employment and failed to reinstate her to the next available CNA position.

80.    AAPHC's actions violated Section 102 of the ADA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability and requires reasonable accommodation for disabilities.

81.    As a direct and proximate result of AAPHC's intentional discrimination, Ms. Winbush has suffered out-of-pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including retirement benefits, all in an amount to be established at trial.

82.    Ms. Winbush is entitled to damages including back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorney's fees and costs of litigation, and all other relief recoverable under the ADA.

83.    AAPHC's actions have also caused, continue to cause, and will cause Ms. Winbush to suffer damages for emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

10

84.     Accordingly, Ms. Winbush is entitled to equitable and monetary relief for AAPHC's violation of her rights under the ADA.

## COUNT III
### PREGNANCY DISCRIMINATION IN VIOLATION OF TITLE VII AND THE PDA

85.     Ms. Winbush incorporates by reference all the preceding paragraphs of the Complaint.

86.     AAPHC discriminated against Ms. Winbush because of her pregnancy by terminating her employment rather than temporarily accommodating her pregnancy-related medical restrictions and failing to reinstate her to the next available CNA position.

87.     In terminating Ms. Winbush's employment rather than granting her medical leave to accommodate her pregnancy-related disabilities, AAPHC treated Ms. Winbush less favorably than similarly situated employees outside of her protected class (female/pregnant), in violation of Title VII and the PDA.

88.     Ms. Winbush's pregnancy was a motivating factor in AAPHC's decision to terminate her employment.

89.     Ms. Winbush would not have been terminated if she had not suffered pregnancy-related medical conditions.

90.     AAPHC acted with reckless disregard for Ms. Winbush's rights under federal law.

91.     AAPHC's discriminatory actions violated Title VII and the Pregnancy Discrimination Act.

92.     As a direct and proximate result of AAPHC's intentional discrimination, Ms. Winbush has suffered out-of-pocket losses and has been deprived of job-related economic benefits,

including income in the form of wages and other job-related benefits, including retirement benefits, all in an amount to be established at trial.

93.     Ms. Winbush is entitled to damages including back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorney's fees and costs of litigation, and all other relief recoverable under Title VII and the PDA.

94.     AAPHC's actions have also caused, continue to cause, and will cause Ms. Winbush to suffer damages for emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

95.     Accordingly, Ms. Winbush is entitled to equitable and monetary relief for AAPHC's violation of her rights under Title VII and the PDA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

(a)     Grant to Ms. Winbush judgment in her favor and against AAPHC under all counts of this Complaint;

(b)     Order AAPHC to make Ms. Winbush whole by providing for her out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of AAPHC's unlawful and discriminatory acts, together with interest thereon, all in an amount to be proven at trial;

(c)     Order AAPHC to compensate Ms. Winbush for mental and emotional damages suffered as a result of AAPHC's unlawful and discriminatory acts;

12

(d)    Grant to Ms. Winbush punitive damages in an amount to be determined by the enlightened conscious of the jury to be sufficient to punish Defendant for its conduct toward Ms. Winbush and deter Defendant from similar conduct in the future for Defendant's willful and intentional violations of federal law;

(e)    Grant to Ms. Winbush a jury trial on all issues so triable;

(f)    Grant to Ms. Winbush her reasonable attorney's fees and reasonable expert witness fees together with any and all other costs associated with this action; and

(g)    Grant such additional monetary and equitable relief as the Court deems proper and just.

Respectfully submitted this 8th day of April 2024.

LEGARE, ATTWOOD & WOLFE, LLC

**Cheryl B. Legare**
Georgia Bar No. 038553
cblegare@law-llc.com

125 Clairemont Avenue, Suite 515
Decatur, Georgia 30030
Telephone: (470) 823-4000
Facsimile: (470) 201-1212

Counsel for Plaintiff

13